NO. 24-14133-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

—————————

UNITED STATES OF AMERICA,
Plaintiff/appellee,

v.

EDUARDO PORTILLO AGUILAR,
Defendant/appellant.

—————————

On Appeal from the United States District Court
for the Southern District of Florida

—————————

APPELLANT'S INITIAL BRIEF

—————————

HECTOR DOPICO
Federal Public Defender
MaeAnn Dunker
Assistant Federal Public Defender
Attorney for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1555
Telephone No. (305) 533-4255

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

# CERTIFICATE OF INTERESTED PERSONS

## United States v. Eduardo Portillo Aguilar
### Case No. 24-14133-C

Appellant Eduardo Portillo Aguilar files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Alta's Cafe

Becerra, Hon. Jacqueline

Becker, Abigail Emily

Diaz Espinosa, Stefan Rafael

Dopico, Hector

Dunker, MaeAnn Renee

D.P.

Fiallos, Kenny Josue

Goodman, Hon. Jonathan

Guthrie, Katherine

I.H.

J.C.

Kahn, Roy Jeffrey

Kirkpatrick, Lynn

Krasnoff, Lauren Field

Lapointe, Markenzy

Lopez, Omar Antonio

Louis, Hon. Lauren Fleischer

Matzkin, Daniel

McDonald, Ian

Mirer, Michael Perry

Murillo, Jennifer

O'Byrne, Hayden P.

Otazo-Reyes, Hon. Alicia M.

Pence Tomanelli, Audrey

Perez, Elio Enrique

Portillo-Aguilar, Eduardo Marel

Reyes Zelaya, Andres Josue

Ruiz, Hon. Rodolfo A.

Sanchez, Hon. Eduardo I.

Torres, Hon. Edwin G.

Counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ MaeAnn Dunker
MaeAnn Dunker
Assistant Federal Public Defender
Attorney for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1555
Telephone No. (305) 533-4255

**STATEMENT REGARDING ORAL ARGUMENT**

Because this case represents the furthest expansion of the Commerce Clause power to justify a prosecution under the Hobbs Act in this Circuit or any other, as well as the application of a contested sentencing guideline enhancement that can add years to a defendant's sentence, Mr. Portillo Aguilar respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES .............................................................v

STATEMENT OF JURISDICTION ......................................................1

STATEMENT OF THE ISSUES ...........................................................2

STATEMENT OF THE CASE ..............................................................3

COURSE OF PROCEEDINGS AND DISPOSITION IN THE
    DISTRICT COURT .......................................................................5

STATEMENT OF FACTS ................................................................. 7

STANDARDS OF REVIEW .............................................................16

SUMMARY OF THE ARGUMENT ....................................................17

ARGUMENT AND CITATIONS OF AUTHORITY .............................20

I.    The district court erred by denying Mr. Portillo Aguilar's
    motion to dismiss the Indictment and motion for judgment of
    acquittal and finding that his actions affected interstate and
    foreign commerce...........................................................................20

A. This Court has held that a Hobbs Act robbery only requires a minimal impact on interstate commerce ............21

B. This case lacks even a minimal impact on interstate commerce ..................................................................23

C. This Court has never upheld a Hobbs Act robbery conviction based on this tenuous of a connection to interstate commerce ...........................................27

II. The district court reversibly erred by applying a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for physically restraining a victim, where the robbery occurred in an open-air parking lot with two exits, and no physical contact between the defendants and the victims occurred ........................38

A. The term "physically restrained" is unambiguous................40

B. This Court's precedents applying U.S.S.G. § 2B3.1(b)(4)(B) are distinguishable ....................................42

C. The district court's error was not harmless .........................43

CONCLUSION ...............................................................49

CERTIFICATE OF COMPLIANCE ...................................................50

CERTIFICATE OF SERVICE....................................................................... 51

# TABLE OF AUTHORITIES

*Gall v. United States,*

    552 U.S. 38 (2007) ...................................................................... 44

*Marbury v. Madison,*

    5 U.S. 137 (1803) ...................................................................... 20

*Molina-Martinez v. United States,*

    578 U.S. 189 (2016) ...................................................................... 44

*N.L.R.B. v. Jones & Laughlin Steel Corp.,*

    301 U.S. 1 (1937) ...................................................................... 38

*Peugh v. Unites States,*

    569 U.S. 530 (2013) ...................................................................... 44

*Rosales-Mireles v. United States,*

    585 U.S. 129 (2018) ...................................................................... 44

*Stirone v. United States,*

    361 U.S. 212 (1960) ...................................................................... 21

*United States v. Bah,*

    439 F.3d 423 (8th Cir. 2006) ...................................................................... 45

*United States v. Carcione,*

　272 F.3d 1297 (11th Cir. 2001) ........................................................21

*United States v. Collins,*

　40 F.3d 95 (5th Cir. 1994) ...............................................................21

*United States v. Deleon,*

　116 F.4th 1260 (11th Cir. 2024) ............................................ 39, 42, 43

*United States v. Diaz,*

　248 F.3d 1065 (11th Cir. 2001) ....................................... 24, 29, 30, 34

*United States v. Dupree,*

　57 F.4th 1269 (11th Cir. 2023) ............................................. 39, 40, 41

*United States v. Evans,*

　476 F.3d 1176 (11th Cir. 2007) ........................................................16

*United States v. Evans,*

　344 F.3d 1131 (11th Cir. 2003) ........................................................16

*United States v. Guerra,*

　164 F.3d 1358 (11th Cir. 1999) .................................................. 28, 29

*United States v. Gray,*

　260 F.3d 1267 (11th Cir. 2001) .................................................. 27, 29

*United States v. Jimenez-Torres,*

  435 F.3d 3 (1st Cir. 2006) ......................................................................22

*United States v. Jones,*

  32 F.3d 1512 (11th Cir. 1994) ............................................... 40, 42, 43

*United States v. Keene,*

  470 F.3d 1347 (11th Cir. 2006) ............................................. 46, 47, 48

*United States v. Lopez,*

  514 U.S. 549 (1995) ...................................................................... 20, 24

*United States v. McFarland,*

  311 F.3d 376 (5th Cir. 2002) ................................................................23

*United States v. Morrison,*

  529 U.S. 598 (2000) ...................................................................... 20, 38

*United States v. Paley,*

  442 F.3d 1273 (11th Cir. 2006) ..........................................................43

*United States v. Pena-Hermosillo,*

  522 F.3d 1108 (10th Cir. 2008) ............................................... 45, 48

*United States v. Plasencia,*

  886 F.3d 1336 (11th Cir. 2018) ..........................................................16

*United States v. Powell,*

693 F.3d 398 (3d Cir. 2012) ........................................................ 22

*United States v. Quigley,*

53 F.3d 909 (8th Cir. 1995) .................................................. 22, 36

*United States v. Ransfer,*

749 F.3d 914 (11th Cir. 2014) .............................................. 28, 29

*United States v. Smalley,*

517 F.3d 208 (3d Cir. 2008) ........................................................ 45

*United States v. Smith,*

967 F.3d 1196 (11th Cir. 2020) ...................................... 24, 33, 34

*United States v. Verbitskaya,*

406 F.3d 1324 (11th Cir. 2005) .............................. 23, 31, 32, 34

*Unites States v. Victor,*

719 F.3d 1288 (11th Cir. 2013) ...................................... 40, 42, 43

*Unites States v. Wang,*

222 F.3d 234 (6th Cir. 2000) .............................................. 21, 23

## STATUTES

18 U.S.C. § 924(c)(1)(A)(ii) ................................................. 3, 5, 9

18 U.S.C. § 1951(a) ....................................................................... 3, 5, 9

18 U.S.C. § 3231 .................................................................................. 1

18 U.S.C. § 3742 .................................................................................. 1

28 U.S.C. § 1291 .................................................................................. 1

**OTHER AUTHORITIES**

The Federalist No. 45 (Madison, J.)......................................................20

Oxford English Dictionary (3d ed. 2025) ....................................... 40, 41

U.S. CONST. art. I § 8, cl. 3 ............................................................ 20, 37

U.S.S.G. § 2B3.1 ............................................................................ 41, 47

U.S.S.G. § 2B3.1(b)(4)(B) ........................................ 2, 3, 13, 14, 18, 19, 38

U.S.S.G. § 2B3.1, cmt. (backg'd). .......................................................41

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The appeal was timely filed on December 18, 2024 (*United States v. Portillo Aguilar*, No. 23-20339-JMB (S.D. FL) Docket Entry ("DE") 224), from the final judgment and commitment entered on December 16, 2024 (DE 220), which disposes of all claims between the parties to this cause.

# STATEMENT OF THE ISSUES

I.  Whether the district court erred in denying Mr. Portillo Aguilar's motion to dismiss and motion for a judgment of acquittal and finding that his participation in the robbery of two individuals in a parking lot outside a restaurant affected interstate and foreign commerce consistent with the constitutional boundaries established in the Commerce Clause.


II. Whether the district court erred in applying a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for physically restraining a victim to facilitate the offense where no physical contact occurred between the defendants and the victims, the robbery occurred in an open-air parking lot with two exits, and the plain language of the guideline does not support applying the enhancement.

**STATEMENT OF THE CASE**

Mr. Portillo Aguilar was found guilty after a stipulated bench trial of one count of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and one count of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Mr. Portillo Aguilar appeals the district court's denial of both his motion to dismiss and motion for a judgment of acquittal, and the district court's finding that his act of robbing two individuals in a parking lot outside a restaurant affected interstate and foreign commerce. He further appeals the district court's application of a two-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(b)(4)(B) for physically restraining a victim to facilitate commission of the offense where the robbery occurred in an open-air parking lot with two exits and there was no physical contact between the defendants and the victims.

Mr. Portillo Aguilar was the defendant in the district court and will be referred to by name or as the appellant. The respondent-appellee, United States of America, will be referred to as the

3

Government. The record will be noted by reference to the document number, as set forth in the docket sheet, followed by the page number.

The appellant is incarcerated.

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE

## DISTRICT COURT

The grand jury returned an indictment on August 17, 2023, charging Mr. Portillo Aguilar with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a)(count IV); one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a)(count V); and one count of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii)(count VI). DE 3.

Mr. Portillo Aguilar filed a motion to dismiss the Indictment on January 16, 2024. DE 47.

The district court held a hearing on the motion to dismiss on February 26, 2024, and orally denied the motion. DE 64.

On July 3, 2024, Mr. Portillo Aguilar proceeded to a stipulated bench trial. DE 125.

On September 19, 2024, the district court issued an oral ruling denying Mr. Portillo Aguilar's motion for a judgment of acquittal and finding him guilty of counts IV, V, and VI in the Indictment. The district court scheduled the case for sentencing. DE 179.

On October 28, 2024, the United States Probation Office ("USPO") issued a draft Pre-Sentence Investigation report ("PSI"). DE 189. Mr. Portillo Aguilar filed written objections to the report on November 12, 2024. DE 201.

On December 13, 2024, the district court held the sentencing hearing. DE 217. The district court sentenced Mr. Portillo Aguilar to a total sentence of 114 months' imprisonment, to be followed by 5 years of supervised release. DE 220:2–3. The custodial sentence consists of concurrent terms of 30 months of imprisonment on counts IV and V, consecutive to a sentence of 84 months on count VI. DE 220:2.

On December 18, 2024, Mr. Portillo Aguilar filed his notice of appeal. DE 224. This appeal follows.

## STATEMENT OF FACTS

Between March and April of 2023, co-defendant Kenny Fiallos ("Fiallos") recruited Mr. Portillo Aguilar, alongside co-defendants Andres Zelaya ("Zelaya") and Jennifer Murillo ("Murillo") to commit a robbery on victims D.P. and J.C. DE 128 ¶ 1. Co-defendant Murillo was responsible for providing detailed information about D.P. and J.C. to Fiallos, who would then recruit others and plan how to best execute the robbery upon the two victims. PSI ¶ 32.

On April 8, 2024, Murillo provided information to Fiallos that D.P. and J.C. would be near Los Paisanos Restaurant in Miami the following day. PSI ¶ 18. She further provided information about the victim's pattern of movement, vehicle type, and amount of money carried. PSI ¶ 17. Fiallos then recruited Zelaya and Mr. Portillo Aguilar to assist in the robbery. PSI ¶ 18.

Los Paisanos ("Restaurant") is a restaurant in Miami serving Honduran and Central American food. DE 128 ¶ 2. The Restaurant is adjacent to a parking lot ("Parking Lot") that is the private property of the Restaurant. DE 128 ¶ 2. Customers must pass through the Parking Lot to enter the Restaurant. DE 128 ¶ 2. The Parking Lot has two

7

entrances, one connecting to West Flagler Street ("West Flagler Entrance") and one connecting to Southwest First Street ("Southwest First Street Entrance"). DE 128 ¶ 2. The Restaurant engages in interstate and foreign commerce and was engaged in interstate and foreign commerce on April 9, 2023. DE 128 ¶ 4.

On April 9, 2023, Fiallos, Zelaya, and Mr. Portillo Aguilar traveled to the Restaurant in a Dodge Durango, with Fiallos acting as the driver. DE 128 ¶ 10. The same day, victims D.P. and J.C. traveled to the Restaurant by car. DE 128 ¶ 11. Around 2:28 p.m., D.P. and J.C. entered the Parking Lot and parked their car near the West Flagler Street Entrance to the Restaurant. DE 128 ¶ 11. The victims parked approximately six feet away from the entrance to the Restaurant. DE 128 ¶ 11. As D.P. and J.C. began to exit their car, the Dodge Durango pulled up behind the victims' car, blocking it in. DE 128 ¶ 12. Zelaya and Mr. Portillo Aguilar exited the Dodge Durango, each carrying a firearm, brandished the firearms at the victims, and demanded the victims' belongings. DE 128 ¶ 12. The victims turned over their belongings, including $2,500 in cash, two gold bracelets, two gold rings, an Apple iPhone, and D.P.'s Honduran passport. DE 128 ¶ 14. After

8

robbing the victims, Mr. Portillo Aguilar and Zelaya jumped back into the Dodge Durango, and Fiallos drove the trio away from the scene. DE 128 ¶ 16. Following the robbery, the victims did not make a purchase at the Restaurant. DE 128 ¶ 27.

On August 17, 2023, the grand jury returned an Indictment charging Mr. Portillo Aguilar and his three co-defendants with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). DE 3.

On January 16, 2024, Mr. Portillo Aguilar moved to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(6) as an unconstitutional exercise of the Government's authority under the Commerce Clause. DE 47. On February 26, 2024, the district court held a hearing and denied the motion. DE 64. The district court found that dismissal was not warranted under Rule 12(b)(6) because the counts charged against Mr. Portillo Aguilar "track[] the statute sufficiently to withstand dismissal." DE 282:32. The district court further found that the Indictment's allegations that the robbery prevented the victims

9

from patronizing the Restaurant and depleted the Restaurant of assets was sufficient to satisfy the requirements of the Commerce Clause. *See* DE 282: 32–33.

Following the denial of his motion to dismiss, Mr. Portillo Aguilar proceeded to a stipulated bench trial. At the stipulated bench trial, the parties agreed to a set of facts and exhibits that established Mr. Portillo Aguilar's factual guilt. *See generally* DE 128. The only issue in dispute at the stipulated bench trial was whether Mr. Portillo Aguilar's actions affected interstate and foreign commerce. DE 128 ¶ 35.

At the bench trial, each side provided an opening statement. DE 252:19–25. The Government then entered the factual stipulations and exhibits into the record without objection. DE 252: 36–46. Following the entry of the stipulated facts, Mr. Portillo Aguilar moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the Government had not presented sufficient evidence to support that Mr. Portillo Aguilar's actions minimally affected interstate and foreign commerce. DE 252: 47–58.

Mr. Portillo Aguilar also argued that the proper standard to evaluate the effect on whether a defendant's actions affected interstate

and foreign commerce in a Hobbs Act robbery prosecution involving an individual victim is whether the effect was a "substantial one." DE 252:49. He recognized, however, that contrary authority existed in this Circuit. DE 252:49–50.

The district court reserved ruling on the motion. DE 252:64. Following the Rule 29 proceedings, Mr. Portillo Aguilar entered one exhibit into evidence without objection. DE 252:64–65. He then renewed his motion for a judgment of acquittal under Rule 29. DE 252:65–68. The Court allowed the parties to submit any closing argument in writing within one week of the hearing and took the matter under advisement. DE 252:68–70.

On September 19, 2024, the district court continued the bench trial and issued an oral ruling. *See generally* DE 236. The district court denied Mr. Portillo Aguilar's motion for judgment of acquittal, finding that the Hobbs Act is "incredibly expansive" and "clearly encompasses robberies of individuals." DE 236:4–5. However, the district court stated the instant facts are "as close a fact pattern" as could be imagined. DE 236:4. The district court rejected the Government's argument that "a loss to the business and closing the business down alone [were]

enough," as well as the argument that the Restaurant's closure for 75 minutes during the police investigation depleted the Restaurant's assets or that news stories about the robbery weeks later caused the Restaurant's business to actually suffer. DE 236:8–9.

Instead, the district court found that in Hobbs Act prosecutions where the victim is an individual, and where the government relies upon the depletion of assets to a business to establish the interstate commerce element, "a connection to the business" is required. DE 236:8. The district court found that the Government established that connection because the defendants robbed the victims "inside a fenced private parking lot" that was "the parking lot of the restaurant." DE 236:9. The district court further found that because the robbery was approximately six feet away from the entrance of the Restaurant and the victims were exiting their car about to make a purchase at the Restaurant, that the robbery occurred "for all intents and purposes . . . inside the restaurant" and that taken together with the Restaurant's voluntary closure to assist law enforcement and the victims, the Government had established an impact on interstate commerce. DE 236:10. After denying Mr. Portillo Aguilar's motion for judgment of

acquittal, the district court adjudicated him guilty of counts IV, V, and VI in the Indictment and scheduled the case for sentencing. DE 236:15–16.

Prior to sentencing, USPO issued a draft PSI calculating Mr. Portillo Aguilar's guideline range. DE 189. Mr. Portillo Aguilar filed written factual and legal objections to the PSI. DE 201. Relevant to this appeal, Mr. Portillo Aguilar objected to the PSI's conclusion that his actions affected interstate and foreign commerce. DE 201:4. He also objected to the PSI's application of a two-level increase in his guidelines for physically restraining a victim during the commission of the offense pursuant to U.S.S.G. § 2B3.1(b)(4)(B). DE 201:6–9. The Government did not file a response to the objections.

On December 13, 2024, the parties appeared for sentencing. DE 217. Consistent with its finding at the bench trial, the district court overruled Mr. Portillo Aguilar's objection to the PSI's conclusion that his actions affected interstate and foreign commerce. DE 242:27. The district court also overruled Mr. Portillo Aguilar's objection to the two-level enhancement under § 2B3.1(b)(4)(B), relying on the response submitted by USPO, which asserted that the enhancement should apply

13

"when defendants restrict a victim's freedom of movement by force or threat of force." PSI Addendum 1 at 5. The district court found that USPO's response was "consistent with the law" and applied the enhancement. DE 242:9. Following the district court's ruling, the resulting guideline range was 30 – 37 months on the conspiracy and robbery counts, followed by a consecutive sentence of 84 months on the brandishing a firearm during a crime of violence count. DE 242:10.

The Government requested a sentence at the middle of the guideline range, whereas Mr. Portillo Aguilar argued for a variance to a total sentence of 84 months. DE 242:10–19. The district court denied Mr. Portillo Aguilar's request for a variance and imposed a sentence of 30 months as to counts IV and V, followed by a consecutive sentence of 84 months as to count VI, five years of supervised release, and a $300 special assessment. DE 242:20, 23, 26. When pronouncing sentence, the district court stated that a 30-month sentence would have been appropriate even if it had sustained Mr. Portillo Aguilar's objection to the two-level enhancement for physically restraining the victim pursuant to § 2B3.1(b)(4)(B). DE 242:20. The district court noted that it had "presided over the bench trial, and I don't think under that fact

14

pattern he is deserving of anything less than 30, and it would have been 30 months irrespective of those two points." DE 242:23.

At the conclusion of the sentencing hearing, Mr. Portillo Aguilar renewed his motion to dismiss and arguments during the bench trial that his actions had not sufficiently affected interstate and foreign commerce. DE 242:27. Mr. Portillo Aguilar also renewed his objection to the PSI's conclusion that the robbery affected interstate commerce and to the application of the physical restraint enhancement. DE 242:27.

On December 18, 2024, Mr. Portillo Aguilar timely filed his notice of appeal. DE 224. This appeal follows.

## STANDARDS OF REVIEW

Generally, a motion to dismiss an indictment is reviewed for abuse of discretion. *United States v. Evans*, 476 F.3d 1176, 1178 (11th Cir. 2007). However, whether a statute is unconstitutional as applied is a question of law and subject to *de novo* review. *Id.*

The Court reviews the denial of a motion for judgment of acquittal *de novo. United States v. Evans*, 344 F.3d 1131, 1134 (11th Cir. 2003).

For sentencing issues, the Court reviews factual findings for clear error and application of the Guidelines *de novo. United States v. Plasencia*, 886 F.3d 1336 (11th Cir. 2018).

## SUMMARY OF THE ARGUMENT

Nothing in the Constitution grants the federal government general police power. Punishment of intrastate conduct has *always* been the purview of the States, not the federal government. In this case, the Government has invaded that purview by charging non-economic, purely intrastate conduct as a federal crime. This expansion represents the furthest expansion of the Commerce Clause power to a robbery in this Circuit, or any other, and exceeds the outer boundaries of the grant of power contained in the Commerce Clause.

In this case, Mr. Portillo Aguilar and his co-defendants targeted and robbed two victims as the victims were exiting their car in a parking lot outside the Restaurant. The district court found that because the victims were about to go inside the Restaurant and purchase lunch, the Government established that the robbery affected interstate commerce because it depleted the Restaurant's assets through preventing the victims from making a purchase and causing a short closure of the Restaurant following the robbery in the Parking Lot. This is so notwithstanding that the Restaurant was not the target

of the robbery, and the victims had no connection with the Restaurant beyond that of mere customers.

No authority in this Circuit or any other has upheld the extension of the Commerce Clause power under the Hobbs Act based on the minimal impact to a non-victim business that was near a robbery but not the victim of a robbery itself. Nor has this Circuit ever found a victim's status as a potential customer of a business engaged in interstate commerce to be a close enough relationship such that the intent to make a future purchase at that business would establish federal jurisdiction consistent with the Commerce Clause. If this Court upholds the district court's decision, it will be the first to expand the Commerce Clause power so far, effectively transforming every robbery into a federal crime. The Court should not condone such an expansion and instead should vacate Mr. Portillo Aguilar's conviction.

Second, the district court erred in applying a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B), which applies where the defendant's conduct involved the "physical restraint" of a victim. The plain language of the guideline text does not support the application of the enhancement when no physical contact occurred. The term "physical

18

restraint" is not ambiguous, and this Court's precedent expanding the physical restraint enhancement to cases that do not involve any physical contact is inconsistent with the plain text of the guideline.

However, even applying that precedent, the district court erred in applying the enhancement on the facts at issue. The district court applied the enhancement because Mr. Portillo Aguilar's brandishing of a firearm left the victims with no alternative but compliance, although no physical contact occurred between the defendants and the victims and even though the robbery occurred in an open-air parking lot with multiple exits. On these facts, the district court erred in applying the physical restraint enhancement in U.S.S.G. § 2B3.1(b)(4)(B).

The district court's sentencing error was not harmless. First, the district court's statement that it would have imposed the same sentence regardless of the guideline error is not sufficient to establish harmlessness, and this Circuit's precedent holding otherwise is wrong. Second, even under this Circuit's precedent, the error was not harmless because the sentence was not substantively reasonable where the district court's only stated rationale for imposing the sentence was based on factors already captured by the guidelines.

**ARGUMENT AND CITATIONS OF AUTHORITY**

I. **The district court erred by denying Mr. Portillo Aguilar's motion to dismiss the Indictment and motion for judgment of acquittal and finding that his actions affected interstate and foreign commerce.**

It is well-established that "the powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written." *Marbury v. Madison*, 5 U.S. 137, 176 (1803); *see also* The Federalist No. 45, pp. 292–93 (Madison, J.). Relevant here, the Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I § 8, cl. 3.

This regulatory authority, however, is not limitless. *United States v. Morrison*, 529 U.S. 598, 608 (2000) (citing *United States v. Lopez*, 514 U.S. 549, 557 (1995)). The Commerce Clause is limited to regulating (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, and (3) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558–59.

The Supreme Court has interpreted the Hobbs Act to extend to the full extent of Congress's power under the Commerce Clause. *See Stirone v. United States*, 361 U.S. 212, 215 (1960). However, the circuits disagree on how far that power extends in cases such as this.

A. <u>This Court has held that a Hobbs Act robbery only requires a minimal impact on interstate commerce.</u>

Under this Circuit's precedent, a conviction for Hobbs Act robbery requires the government to show that the robbery had at least a "minimal" effect on interstate commerce. *United States v. Carcione*, 272 F.3d 1297, 1300–01 (11th Cir. 2001) (finding that robbery affected interstate commerce when defendant flew across state lines and made interstate phone calls to facilitate robbery).

Several other circuits, by contrast, require a heightened standard for impact on interstate commerce in Hobbs Act robberies of individuals, as opposed to businesses. *See United States v. Wang*, 222 F.3d 234, 239–40 (6th Cir. 2000) (finding that in a Hobbs Act robbery of an individual the connection between an individual and a business must a "substantial one"); *United States v. Collins*, 40 F.3d 95, 100 (5th Cir. 1994) (robbery of an individual can violate the Hobbs Act only if (1)

the acts deplete the assets of an individual directly engaged in interstate commerce, (2) the acts cause the individual to deplete the assets of an entity engaged in interstate commerce, or (3) the number of victims or sum involved is so large as to create a cumulative effect on commerce); *United States v. Quigley*, 53 F.3d 909, 910 (8th Cir. 1995) (finding Congress may only regulate conduct that has a direct or substantial effect on interstate commerce).

Still others, while technically adhering to the "minimal" impact standard, have cautioned against elevating every-day crimes to Hobbs Act violations when the robbery involves an individual victim instead of a business. *United States v. Jimenez-Torres*, 435 F.3d 3,7–8 (1st Cir. 2006) ("Where, as in this case, the crime concerns the robbery of a home rather than of a business, we approach the task of applying the de minimis standard with some caution, lest every robbery (which by definition has some economic component) become a federal crime."); *United States v. Powell*, 693 F.3d 398, 407 (3d Cir. 2012) (declining to explicitly require a substantial effect on interstate commerce in Hobbs Act robberies of individuals but emphasizing that "we would likely find problematic Hobbs Act prosecutions for robberies that 'cause[] only a

speculative indirect effect on a business engaged in interstate commerce'") (quoting *Wang*, 222 F.3d at 238) (alterations in original).

For further review, Mr. Portillo Aguilar maintains that the proper standard to evaluate whether a defendant's actions affected interstate commerce in a Hobbs Act prosecution involving an individual victim is whether the effect was a substantial one.

B. <u>This case lacks even a minimal impact on interstate commerce.</u>

Even so, this Circuit's "minimal effect" standard is not toothless. This is particularly so where the robbery involves an individual victim, as opposed to a business.

When the indictment charges Hobbs Act robbery of an individual, a court must conduct a "fact-specific inquiry into the directness and likely extent of any impact on interstate commerce." *United States v. Verbitskaya*, 406 F.3d 1324, 1332 n.10 (11th Cir. 2005) (citation omitted). This makes sense—the Hobbs Act regulates economic crime. And while businesses, by their very nature, are generally engaged in economic activities, individuals are not. *But see United States v. McFarland*, 311 F.3d 376, 391 (5th Cir. 2002) (Garwood J., dissenting) (rejecting the argument that robbery of a retail store necessarily fell

within the *Lopez* category related to the regulation of "persons or things in interstate commerce.").

Robberies of individuals nonetheless may affect interstate commerce in certain circumstances. This Court has held that the government may prove the robbery of an individual affected interstate commerce under the Hobbs Act where: (1) the crime depletes the assets of an individual who is directly engaged in interstate commerce; (2) the crime causes the individual to deplete the assets of an entity engaged in interstate commerce; or (3) the number of individuals victimized or the sums involved are so large that there will be a cumulative impact on interstate commerce. *United States v. Diaz*, 248 F.3d 1065, 1088–89 (11th Cir. 2001). This Court later clarified that these three means of showing an effect on interstate commerce are not exclusive. *See, e.g., United States v. Smith*, 967 F.3d 1196, 1208 (11th Cir. 2020).

Here, the district court found that Mr. Portillo Aguilar's actions affected interstate commerce because his actions had a minimal impact on the nearby Restaurant's operations where the record established that the victims were robbed in the Restaurant's private parking lot, six feet from the door, and walking into the Restaurant with the intention

of making a purchase. DE 236:10–11. The district found that "[i]t is very difficult on those facts for me to find that the robbery, for all intents and purposes, [is] not inside the restaurant." DE 236:10. The district court further found that the victim's intention to make a purchase was a close enough connection with the Restaurant to find that the robbery affected interstate commerce. DE 236:12–13.

This finding was error. First, that the victims planned to purchase lunch at the Restaurant cannot be enough to establish that the defendants' actions affected interstate commerce by depleting the Restaurant's assets. A planned purchase does not establish that the purchase would have occurred: the victims could have changed their minds, decided to go elsewhere, or been called away from lunch unexpectedly. Moreover, every time a defendant deprives a victim of money it can be said that he is depriving the victim from making a planned purchase. According to the district court's logic, every planned purchase that does not occur because a defendant deprives a victim of money intended to be spent will be a federal crime. This logic stretches the Commerce Clause power beyond its limited grant of authority.

Nor do the events at the Restaurant following the robbery,

25

combined with the victim's inability to make a purchase, establish an impact on interstate commerce through a depletion of assets to the Restaurant, as the district court found. The facts following the robbery—the police arriving at the Restaurant and requesting surveillance footage, concerned customers coming out of the Restaurant to assist the victims, and emergency vehicles arriving at the Parking Lot to render medical attention to the victims—would have occurred whether the robbery was in the Parking Lot or a few feet away on West Flagler Street. DE 128¶¶ 19–26. Further, the record established that there was *no* effect on the Restaurant's profits: the day of the robbery (Sunday, April 9, 2023), the Restaurant's total sales were $2,359—higher than 13 of the 24 previous Sundays, and the total sales for the week of the robbery (April 3 – 9, 2023) were the highest of any week of sales data entered into evidence. DE 129-6 & DE 132:3. On these facts, it cannot be said that the Restaurant suffered any depletion of assets. Thus, the district court's reliance upon the depletion of assets theory in finding that the Government established an impact on interstate commerce was error.

26

C. <u>This Court has never upheld a Hobbs Act robbery conviction based on this tenuous of a connection to interstate commerce.</u>

This Court has *never* held that an impact on interstate commerce can be satisfied through the impact on a business that is not the direct object of the robbery itself. Nor has it found that the intention of a victim to make a later purchase at the business enough to find an impact on interstate commerce. On the contrary, this Circuit has affirmed the "depletion of assets" theory almost exclusively in cases where the business is the direct object of the robbery.

For example, in *United States v. Gray*, 260 F.3d 1267 (11th Cir. 2001), the defendant robbed a Church's Chicken restaurant by entering the restaurant, jumping over the counter, throwing the cash register on the floor, and fleeing the scene with the contents of the cash register. *Id.* at 1270. Finding a "closer question than the Government maintains," this Court nonetheless held that the money taken from the cash register inside the business, the closure of the restaurant for investigation, and the disruption by the robber inside the restaurant during lunch, had a minimal impact on interstate commerce. *Id.* at 1276. The object of the robbery was the business that was directly engaged in interstate

commerce, and the defendants forced that object to close because of the robbery inside the business.

Take also, *United States v. Ransfer*, 749 F.3d 914 (11th Cir. 2014). In *Ransfer*, the defendants "engaged in a series of robberies of businesses in Florida" including Doral Ale House, Wendy's Farm Store, and two CVS Pharmacies. *Id.* at 918–19. Each of these business-victims was engaged directly in interstate and foreign commerce. *Id.* This Court found a minimal impact on interstate commerce where the defendant stole money directly from each of the named objects of the Hobbs Act robbery, forcing the stores to close, and thus impacting business operations. *Id.* at 936. Furthermore, the impact on the businesses was not attenuated because the businesses were the direct victims of the defendant's robbery.

The same is true of *United States v. Guerra*, 164 F.3d 1358 (11th Cir. 1999). In *Guerra*, the defendant walked into a gas station, a business that stocked items from out of state retailers and demanded money from the cashier inside the store. *Id.* at 1359. In fear, the cashier gave the defendant the gas station's money. *Id.* This Court found that the store's closure for two hours and the loss of money from the cash

28

register satisfied the commerce element. *Id.* at 1361. But in *Guerra* too, the business was the direct object of the robbery, and the defendant's actions *directly* caused the business to deplete its assets through the cashier handing the defendant the gas station's money. *Id.*

But here, the Restaurant was not the direct object of the robbery, as was the case in *Gray*, *Ransfer*, and *Guerra*. The record establishes that Mr. Portillo Aguilar and his co-defendants were targeting the victims, not the Restaurant. *See* DE 128 ¶¶ 8, 9 (discussing how the defendants "surveilled the Victims" and "planned the robbery of the Victims"). That the Restaurant happened to be nearby at the time the robbery occurred does not make this case like where the victim of the robbery was itself directly engaged in interstate and foreign commerce. To hold otherwise would mean that nearly every robbery of an individual can be a federal case simply because it occurs near a business that is engaged in interstate commerce.

To the contrary, this Court made clear in *Diaz* that in a case involving the robbery of an individual, it is "not enough on its own" for the government to show that the robbery affected a non-victim business that was engaged in interstate and foreign commerce. *Diaz*, 248 F.3d at

1088. In *Diaz,* this Court considered the impact on interstate commerce in a Hobbs Act extortion case. 248 F.3d at 1088. The defendants in *Diaz* targeted husband-and-wife owners of a medical center that billed out-of-state insurance companies. The *Diaz* defendants targeted the victims *because of* their status as owners of the business. *Id.* at 1088–89. As part of the scheme, the *Diaz* defendants kidnapped the husband owner and demanded $75,000 from the wife owner for the husband's return. In demanding the ransom, the *Diaz* defendants specifically mentioned that they knew about the husband and wife's medical clinic business. *Id.* at 1076. In the days while the husband owner was kidnapped, and the wife owner was attempting to find the ransom money, the medical clinic closed. *Id.*

In finding that the closure of the husband and wife's medical clinic minimally impacted interstate commerce, this Court reasoned that although the victims were not directly engaged in interstate commerce, they nonetheless had a close relationship with the medical clinic, which was directly engaged in interstate commerce. *Diaz,* 248 F.3d at 1088. The Court concluded that the closure of the business was not attenuated or coincidental—it was the direct result of the extortion of

30

its owners, the objects of the Hobbs Act conspiracy, who were targeted *because of* their relationship with the business engaged in interstate commerce. *Id.* at 1088–89.

The Court cautioned however, that not every offense that causes a business to close will be sufficient to establish an effect on interstate commerce. *See id.* at 1088 ("proof that the corporation was directly engaged in interstate commerce, like [the medical center] is not enough on its own."). However, on a record that established the defendants targeted the victims because of their connection to a business engaged in interstate commerce, relying upon the depletion of assets to that business because of the defendant's robbery satisfied the Commerce Clause. *Id.* at 1088–89 ("What sets this case apart is the fact that the role of the [victims] with regard to their business, which was directly engaged in interstate commerce, was not coincidental. Rather, the Court is convinced by the evidence presented at trial that appellants targeted the [victims] because of their interest in Rosa Medical Center.").

Similarly, in *United States v. Verbitskaya*, 406 F.3d 1324 (11th Cir. 2005), the defendant targeted the victim for extortion after learning

31

the victim had received a large insurance settlement. *Id.* at 1328–30. The victim used the money to start a business and possessed multiple valuable paintings which he intended to use to open an art gallery and sell to out-of-state clients. *Id.* Each of these facts was known to the defendant and served as the defendant's motivation for targeting the victim. *Id.* at 1333–34. The defendant ultimately extorted the victim into transferring $260,000 to a Swiss bank account and stole the victim's valuable paintings, which the victim had intended to sell to out of state buyers. *Id.*

This Court found that the *Verbitskaya* defendant's actions minimally impacted interstate commerce. 406 F.3d at 1333–34. In so finding, the Court considered the fact that the defendant had extorted money obtained from an out of state insurance company, stolen paintings that the victim had intended to sell out of state, and stolen money from the victim's business bank account, which the victim used to do business outside the state. *Id.* Again, here, the defendant directly targeted the victim because of the victim's ties to interstate commerce— the out-of-state insurance settlement and the victim's known, intended business dealings in interstate commerce.

Take also this Court's opinion in *United States v. Smith*, 967 F.3d 1196 (11th Cir. 2020). In *Smith*, the defendant, a self-proclaimed aspiring rap artist, befriended the victim, the owner of a music engineering studio. *Id.* at 1200–01. The victim invited the defendant to her music studio, where the defendant demanded a copy of Pro Tools, an expensive video editing software that the victim used in her business, which operated in interstate commerce. *Id.* When the victim declined the defendant's request, the defendant robbed her of the thumb drive containing the software program, in addition to her cell phone, wallet, and cash. *Id.* At trial, the victim testified that the software was essential to her business and that she serviced out-of-state clients using the software. *Id.* at 1209.

This Court found that the defendant's actions minimally affected interstate commerce because the victim, as the engineer of a music studio, was directly engaged in interstate commerce. *Smith*, 967 F.3d at 1209. This Court further found that the stolen items were essential to her business, which served out-of-state clients. *Id.* Taken together; this was sufficient to find that the defendant's actions affected interstate commerce. *Id.* at 1209–10.

In each of *Diaz*, *Verbitskaya*, and *Smith*, the individual victims had a direct and established relationship with the business engaged in interstate commerce. In those cases, any impact to the business was not coincidental—instead, the victims were targeted *because of* their relationship with a business engaged in interstate commerce. The reasoning in *Diaz*, *Verbitskaya*, and *Smith* demonstrates that when the government seeks to rely on the depletion of assets to a non-victim business to satisfy the commerce element in a Hobbs Act prosecution, it must show some direct, more than coincidental relationship between the victims and the impacted business. This makes sense. To find otherwise means that almost any robbery of an individual could be transformed into a federal crime under the Hobbs Act by mere chance.

No such close relationship exists here. The district court found that the relationship of mere customer was "enough of a connection with the Restaurant that does business in interstate commerce." DE 236:12. But finding as much would transform nearly every robbery into a federal Hobbs Act violation. Under this logic, if the defendants robbed a victim of money inside a shopping mall, and that victim planned to make a purchase at any of the stores, that robbery would be a federal

Hobbs Act violation because the stores lost the victims' business. If a defendant robbed a victim of her iPhone while the victim was on a public sidewalk, and the victim had planned to make an online purchase on Amazon, the robbery would be a federal Hobbs Act violation because the online retailer lost business. If a defendant robbed a victim of her wallet while walking down the sidewalk about to order her daily Starbucks coffee, that robbery would be a federal Hobbs Act violation because Starbucks lost the victim's potential or intended business. In 2025, individuals are constantly potential customers about to engage in transactions with businesses that engage in interstate commerce. That fact cannot transform the Commerce Clause into an all-encompassing police power.

Nor does the fact that the robbery occurred on the Restaurant's property create such a close relationship between the victims and the Restaurant such that relying upon any alleged impact to the Restaurant's operations was within the outer bounds of the Commerce Clause power. As stated above, the facts following the robbery regarding police investigation and concerned customers assisting the victims, DE 128 ¶¶ 19–26, would have occurred whether the robbery

occurred in the Parking Lot or just a few feet away on the public West Flagler Street. The mere fact that the robbery of an individual occurs in the private parking lot of a business engaged in interstate commerce does not by itself show that the business was sufficiently affected by the defendant's actions to invoke the Commerce power.

The only Circuit to have considered facts like those here is the Eighth Circuit in *United States v. Quigley*, 53 F.3d 909 (8th Cir. 1995)—and that Court rejected the same theory that the Government now advances. In *Quigley*, the defendants robbed two victims who were en route to pick up an order of beer at a liquor store, which the victims had purchased over the phone. *Id.* at 910–11. The government attempted to argue that the robbery of the victims affected interstate commerce because the victims were prevented from reaching the liquor store to pick up the purchase. *Id.* at 911. The district court granted the defendants' motion for judgment of acquittal, and the Eighth Circuit affirmed, noting that the "robbery of [the victims] had no effect or realistic potential effect on interstate commerce[.]" *Id.* at 911. On those facts, the Eighth Circuit reasoned that "a reasonable jury must necessarily entertain a reasonable doubt that the robbery of [the

victims] affected interstate commerce." *Id.*

The same is true here: the victims here were the Restaurant's potential customers that the defendants prevented from making a purchase. But a robbery victim's status as a mere potential customer of a business engaged in interstate commerce does not, by itself, have an actual impact on interstate commerce. In this Circuit's three decades of precedent applying the minimal-effects test, it has never upheld a Hobbs Act prosecution because a victim was the potential or future customer of a non-victim business and where a defendant's robbery prevented the victim from completing that purchase. Indeed, such a holding would create absurdly expansive results and exceed the Commerce Clause's limited grant of power.

The Commerce Clause is not a mere guidepost—it is a limited grant of power that must not be extended. The Founding Fathers only granted the federal government the power to "regulate Commerce with foreign nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I § 8, cl. 3. The scope of that power "may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would

effectually obliterate the distinction between what is national and what is local and create a completely centralized government." *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937). Indeed, the foundational principle that general police power is left to the States, is one "deeply ingrained in our constitutional history" and must be respected. *United States v. Morrison*, 529 U.S. 598, 618 n.8 (2000). Stated simply, federalism demands that the federal prosecution power under the Hobbs Act have a limit, and that limit was exceeded by the prosecution in this case.

## II. The district court reversibly erred by applying a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for physically restraining a victim, where the robbery occurred in an open-air parking lot with two exits, and no physical contact between the defendants and the victims occurred.

Section 2B3.1(b)(4)(B) provides for a two-level enhancement "if any person was physically restrained to facilitate the commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). At sentencing, Mr. Portillo Aguilar objected to the two-level increase in his offense level because no physical contact between the defendants and the

victims occurred during the robbery. DE 201:6–8 & DE 242:7–10. Mr. Portillo Aguilar acknowledged this Circuit's precedent to the contrary, which finds that the enhancement can apply when the defendant leaves a victim with "no alternative but compliance," even in the absence of any physical contact. *United States v. Deleon*, 116 F.4th 1260, 1263 (11th Cir. 2024) (citation omitted). Mr. Portillo Aguilar argued, however, that this Court's application of the enhancement in the absence of physical contact was inconsistent with the plain language of the guideline, contrary to *United States v. Dupree*, 57 F.4th 1269, 1277 (11th Cir. 2023). DE 201:6–8 & DE 242:7–10.

More importantly, Mr. Portillo Aguilar argued that *Deleon* and its predecessors were distinguishable, and that the enhancement should not apply because the robbery occurred in an open-air parking lot with two exits, and no movement of the victims occurred, physical or otherwise. DE 242:7–10.

The district court adopted the probation office's response that the enhancement should apply when the defendants restrict a victim's freedom of movement by force or threat of force and found that such restriction occurred under the facts here. PSI Addendum 1 at 5; DE

242:9. The district court relied upon *United States v. Jones*, 32 F.3d 1512, 1516-19 (11th Cir. 1994) and *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013) and found that the enhancement should apply when the defendant's actions leave no alternative but compliance. *See* DE 242:9–10 (adopting probation's finding as "consistent with the law"). The district court's application of the guideline was error, and the error was not harmless.

A. <u>The term "physically restrained" is unambiguous.</u>

First, the district court erred in applying the enhancement because it is inconsistent with the plain text of the guideline. In construing a guideline, courts must start with the plain language of the text. *Dupree*, 57 F.4th at 1277. Only if the text of the guideline is ambiguous should a court look to the commentary. *Id.* at 1276–77. This Court's precedent finding that the enhancement does not require physical contact, is inconsistent with the plain text of the guideline and thus contrary to the mandate in *Dupree*.

As an initial matter, "physically restrained" is not ambiguous. To "restrain" someone means to "restrict, limit, confine." *Restrain*, Oxford English Dictionary, (3d ed. 2025)

https://www.oed.com/dictionary/restrain_v1?tab=meaning_and_use#25 713964 [https://perma.cc/9FW3-5UJ2]. "Physically" means "[w]ith regard to the body; in bodily terms or by bodily means." *Physically*, Oxford English Dictionary, (3d ed. 2025), https://www.oed.com/dictionary/physically_adv?tab=meaning_and_use#30459183 [https://perma.cc/S4BN-FN6D]. Taken together, the plain language of the guideline supports that a "physical restraint" involves the body, as opposed to a mental or psychological restraint from the fear of a firearm.

Because the text of the guideline is clear, the Court should not look further. *See Dupree*, 57 F.4th at 1277. But even if the Court finds the guideline to be ambiguous, the background note to § 2B3.1 confirms that a "physical restraint" requires more than mental or psychological intimidation. The background note to § 2B3.1 provides that "[t]he guideline provides an enhancement for robberies where a victim was . . . physically restrained by being tied, bound, or locked up." U.S.S.G. § 2B3.1, cmt. (backg'd). Nothing similar to these acts, nor any physical contact at all, occurred here. In sum, because the plain language of the guideline mandates that restraint must be "physical," and the

41

background note supports as much, the physical restraint enhancement should not apply to Mr. Portillo Aguilar's conduct in this case. This Court's precedent holding otherwise is wrong.

B. This Court's precedents applying U.S.S.G. § 2B3.1(b)(4)B) are distinguishable.

However, even under this Court's precedent, the enhancement should not apply to the facts here because no physical movement occurred, as was the case in *Jones*, *Victor*, and *Delon*. In *Jones*, the defendants robbed a bank and forced multiple victims at gunpoint into a safe room and ordered them to lie face down on the floor. 32 F.3d at 1518–19. In finding that the physical restraint enhancement was appropriate, this Court reasoned that the defendants' actions "restricted their victim's mobility and capacity to observe events to facilitate the robbery." *Id.* at 1519. Similarly, in *United States v. Victor*, the defendant entered inside a bank lobby and demanded the movement of the teller behind the counter at gunpoint, leaving no escape. 719 F.3d at 1289–90. Likewise, in *United States v. Deleon*, a defendant brandished a firearm at a store clerk trapped behind a cashier counter and reached

over the counter toward the clerk with the gun, leaving "no alternative but compliance" with the defendant's demands. 116 F.4th at1264–65.

Here, unlike *Jones*, *Victor*, and *Deleon*, the victims were not physically restrained in an enclosed space, confronted alone and face to face with a defendant and a firearm. Instead, the victims were in an open-air parking lot with two exits. Mr. Portillo Aguilar and his co-conspirators did not physically lunge at the victims while they brandished the firearms, nor did they instruct the victims to move to a particular location, transforming the encounter into constructive physical restraint. The actions of the defendants here do not rise to the level of constructive physical restraint as the actions of the defendants in *Jones, Victor, and Deleon*, and the enhancement should not apply.

C. <u>The district court's error was not harmless.</u>

Because Mr. Portillo Aguilar objected to the enhancement in the district court, the Government bears the burden of proving that the error was harmless. *See United States v. Paley*, 442 F.3d 1273, 1278 (11th Cir. 2006) ("The government bears the burden of persuading [this Court] that the district court would have imposed the same sentence

even if it had not erred in interpreting the guidelines."). The Government cannot meet that burden in this case.

The Guidelines "remain the starting point for every sentencing calculation in the federal system." *Peugh v. United States*, 569 U.S. 530, 542 (2013). As a result, an erroneous guideline calculation constitutes "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). The Supreme Court has emphasized the likely impact of such an error—"an error resulting in a higher range than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than necessary to fulfill the purposes of incarceration." *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (internal quotes omitted); *see also Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) ("the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.").

First, the district court's statement that it would have imposed the same sentence regardless of an asserted error in the calculation of the guideline range is not sufficient to establish harmlessness. Other circuits have recognized that a district court's statement that it would

44

have imposed the same sentence regardless of any guideline error insufficient to insulate the sentence from appellate review. *See United States v. Smalley*, 517 F.3d 208, 214 (3d Cir. 2008) ("The District Court's bald statement that it would have given Smalley a 71-month sentence even had it applied the three-level enhancement is not sufficiently detailed to comply with the [requirement that courts calculate the Guidelines]"); *United States v. Bah*, 439 F.3d 423, 431 (8th Cir. 2006) ("[W]here, as here, the sentencing court pronounces an identical alternative sentence, not based on any alternative guidelines calculations, but instead intended to cover any and all potential guideline calculation errors, the sentencing court effectively has ignored the requirement . . to first determine the appropriate guidelines sentencing range for the alternative sentence.") (internal citation and quotes omitted); *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1109 (10th Cir. 2008) ("We also find that the court's alternative holding that the 121-months sentence 'would be imposed even if the advisory guideline range was determined to be improperly calculated' was likewise procedurally unreasonable.").

Similarly, in this case, the district court's statement that it would have imposed the same sentence regardless of any guideline error is not sufficient to demonstrate that the error was harmless. In this Circuit, a guideline error is harmless if it played no part in the sentence chosen, and that chosen sentence would be substantively reasonable even under the correct guidelines. *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). Mr. Portillo Aguilar's sentence fails at both prongs and therefore must be reversed.

In *Keene*, this Court explained that it will not reverse where re-sentencing would be "pointless . . . and unnecessary" because the guidelines error played no part in the court's chosen sentence and invited district courts to provide guidance in the record where "the guidelines advice that results from [the disputed calculation] does not matter to the sentence imposed after the § 3553(a) factors are considered." 470 F.3d at 1349, 1347.

In this case, in pronouncing sentence, the district court explained:

> I am going to sentence him at the low end at the 30 months. That would have been my sentence, I have to tell you, either way. So if the enhancement had not applied, I think it would have been appropriate for it to have been a 30-month sentence for the conduct at issue. Recognizing of course, that to that 30 months I have to add the 84, and he is looking at

> 114 months, which I think is a very significant sentence for
> the conduct.

DE 242:20.

This statement provides no assurance that the sentence was based on factors independent of the guidelines. The "conduct at issue" is fully accounted for by the guideline calculations, including an 84-month consecutive sentence for brandishing a firearm during the robbery, and a range that accounts for the value of the stolen property. *See* U.S.S.G. § 2B3.1. Indeed, a careful review of the entirety of Mr. Portillo Aguilar's sentencing transcript reveals no comments from the district court which point to a basis for a 30-month sentence independent of the guidelines. Furthermore, the district court imposed a sentence at the lowest point in the improperly-calculated guideline range, strongly indicating that it would have given a lower sentence if the guidelines had been calculated properly.

Mr. Portillo Aguilar's sentence also fails the second prong of *Keene*'s harmless error review: whether the sentence was substantively reasonable **had the guidelines been correctly applied**. *See Keene,* 470 F.3d at 1350 (requiring a "determination that the sentence would

be reasonable even if the guidelines issue had been decided in the defendant's favor").

It would not. Here, Mr. Portillo Aguilar is a first-time offender with no criminal history whatsoever, who the district court agreed affirmatively accepted responsibility by proceeding to a stipulated bench trial. DE 242:23. The record as a whole does not support a high-end sentence of 30 months had the guidelines been correctly calculated as 24 – 30 months, particularly when followed by an 84-month consecutive sentence for the brandishing of a firearm. The district court offered no explanation other than the conduct at issue and its familiarity with the facts of the case—factors that are fully accounted for in the guideline range. Accordingly, the sentence imposed was not substantively reasonable, and the district court's error was not harmless.

Alternatively, if this Court finds that the district court's error was insulated by the court's barebones *Keene* statement, then Mr. Portillo Aguilar respectfully maintains that *Keene* was wrongly decided, for purposes of further review. *See, e.g., Pena-Hermosillo,* 522 F.3d at 1118 ("[W]here the district court offers no more than a perfunctory

explanation for its alternative holding, it does not satisfy the requirement of procedural reasonableness").

## CONCLUSION

For the forgoing reasons, Mr. Portillo Aguilar asks this Court to reverse the judgment of the district court and remand with instructions to enter a judgment of acquittal. Alternatively, Mr. Portillo Aguilar asks the Court to reverse the judgment of the district court and remand for resentencing.

Respectfully Submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

By:   /s/ MaeAnn Dunker
MAEANN DUNKER
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130-1555
Telephone No. (305) 533-4255

# CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 8934 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Century Schoolbook font.

/s/ *MaeAnn Dunker*
MAEANN DUNKER

# CERTIFICATE OF SERVICE

I HEREBY certify that on June 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent seven copies to the Clerk of the Court via third party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Hayden P. O'Byrne, United State Attorney and Daniel Matzkin, Assistant United States Attorney, Appellate Division, 99 N.E. 4th Street, Miami, Florida 33132.

/s/ *MaeAnn Dunker*
MAEANN DUNKER